UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

TERRENCE BROWNLEE,

          Plaintiff,

    v.

P. LAM, et al.,

          Defendants.

Case No. 16-cv-07048-WHO (PR)

**ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY
JUDGMENT**

Dkt. No. 20

## INTRODUCTION

      Plaintiff Terrence Brownlee suffers from lower back pain. He alleges that his primary care doctor (Friederichs) at CTF-Soledad provided him constitutionally inadequate medical care and that his grievance reviewers (Lam, Posson, Lewis, Ahmed, Sweet, Lester, and Kalisher) are liable for failing to intervene. However, to find that there is a material dispute that defendants were deliberately indifferent to Brownlee's serious medical needs, as I must to deny defendants' motion for summary judgment, I would have to find that defendants' conduct was medically unacceptable under the circumstances in conscious disregard of an excessive risk to Brownlee's health. *Toguchi v. Chung*, 391 F.3d 1051, 1058-60 (9th Cir. 2004). To the contrary, the record shows that Brownlee received timely, appropriate, and constitutionally adequate medical care. Defendants' motion for

summary judgment will be granted.[1]

## BACKGROUND

The following factual allegations are undisputed unless specifically noted otherwise. From February 2016 to September 2017, Brownlee met with medical staff at CTF-Soledad many times regarding treatment for his back pain, as described below.

**February 2, 2016**: Upon Brownlee's arrival at CTF, he was examined by defendant Friederichs, a primary care physician. Friederichs noted that Brownlee, who was 55, had a history of chronic low back pain with a diagnosis of mild degenerative disc disease (lumbar spondylosis).[2] (Defendants' Motion for Summary Judgment (MSJ); Friederichs Decl., Dkt. No. 20-2 ¶ 10.) Brownlee had had two prior surgeries (laminectomies) to treat the condition, in 2004 and 2006. Friederichs ordered an x-ray for Brownlee, which he received on February 4. (*Id.* ¶¶ 11, 13.) He noted that Brownlee was currently taking salsalate, an anti-inflammatory, a drug Friederichs would add to his treatment plan for plaintiff. (*Id.* ¶ 12.)

**February 8**: From the x-ray, Friederichs diagnosed mild degenerative disc disease, which is the gradual deterioration of the discs between the vertebrae.[3] Based on Brownlee's condition, Friederichs formulated a conservative treatment plan of medication to alleviate pain and light exercise and stretching. Surgical intervention was unneeded. (*Id.* ¶ 13.)

**May 3**: Brownlee filed a grievance in which he requested an MRI and a referral to a spinal injury specialist. (*Id.*, Posson Decl., Exs., Dkt. No. 20-5 at 4.)

**May 13**: Friederichs examined Brownlee concerning his mild degenerative disc

---

[1] Defendants have provided plaintiff with the required warnings under *Rand v. Rowland*, 154 F.3d 952, 962-63 (9th Cir. 1998) (en banc). (Dkt. No. 20-1.)

[2] "Spondylosis" can refer to osteoarthritis of the spine or to any manner of spinal degeneration. (MSJ, Dkt. No. 20 at 7.)

[3] "[D]egenerative disc disease is not truly a disease; it is a term used to describe the normal changes in an individual's spinal discs as the person ages." (MSJ, Posson Decl., Dkt. No. 20-3 ¶ 11.)

United States District Court
Northern District of California

disease diagnosis. Brownlee said his back pain level was "6/10," but Friedrichs noticed that his range of motion in his back was fair and he had "good lateral (left and right) tilt." (MSJ, Posson Decl., Dkt. No. 20-3 ¶ 14.)

For pain relief, Friederichs prescribed Brownlee Nortriptyline, an antidepressant that reduces muscle pain and tension, and salsalate, an anti-inflammatory. He confirmed that surgical intervention was not medically necessary and would not benefit Brownlee. (*Id.* ¶ 14.) Friederichs provided Brownlee with lumbar exercises and extended his temporary lower bunk accommodation. The accommodation could not be made permanent because there was no evidence from the x-ray of serious disease. (*Id.* ¶ 15.) On May 19, the Reasonable Accommodation Panel determined that "no interim accommodation was required" because plaintiff already had a lower bunk assignment. (*Id.* ¶ 14.)

**May 27**: Brownlee's grievance was denied. An MRI was not medically necessary for the treatment of his condition. Referral to a specialist was also disallowed: he had a fair range of motion in his back; his mild degenerative disc disease was caused by age; and surgical treatment could not change or improve the condition. Defendant Ahmed interviewed Brownlee regarding his grievance. (*Id.* ¶ 15.)

**June 15**: Brownlee was interviewed by defendant Lam regarding a second grievance. In this one, Brownlee had requested: (i) that his temporary lower bunk accommodation be made into a permanent one; (ii) to be seen by a neurologist, neurosurgeon or orthopedist; and (iii) assignment to a different primary care physician.

Lam denied these requests. The request for a permanent bunk assignment was premature. Brownlee's current lower bunk assignment was to last until November, at which time he would be reevaluated. His other requests were denied as unnecessary. His x-ray results showed only mild lumbar degenerative changes. There was no need to refer him to a specialist or another doctor. In his notes, Lam states that Brownlee said that his medications made his pain tolerable and that he could perform normal daily activities. (*Id.* ¶ 16.)

**June 17**: Defendant Kalisher interviewed Brownlee regarding yet another

grievance.  In this one, Brownlee asked (i) that his temporary lower bunk accommodation be changed to a permanent one and (ii) to be seen by a different primary care physician based on an alleged conflict of interest.  The requests were denied because Brownlee already had a lower bunk accommodation, and inmates may not select providers.  Provider assignments are determined by health care management based on the institution's needs. (*Id.* ¶ 18.)

**June 23**:  Brownlee had a follow up evaluation with Friederichs regarding the treatment plan for his back pain.  He stated he had had two back surgeries in the past and had been told that he could have the surgical implantation of titanium rods.  However, he indicated having no interest in any further surgery.  He informed Friederichs that Nortriptyline was not relieving his back pain and that he previously had a better response to Gabapentin.  In response, Friederichs made a non-formulary request for Gabapentin because this medicine was not on the CDCR's list of allowable medications.  Friederichs advised Brownlee to continue his current pain medication as prescribed while the request for Gabapentin was pending.  Brownlee's Disability Placement Program Verification was also updated as "DLT" status, which indicates mobility impairment that requires level terrain.  Friederichs also renewed Brownlee's temporary accommodation for a ground floor cell, limited stairs, a bottom bunk, and lifting restrictions.  (*Id.* ¶ 19.)

**July 13**:  Defendant Posson issued a response to one of Brownlee's grievances.  He noted that Friederichs's renewal of the temporary lower bunk accommodation on June 23, 2016 was appropriate at that time.  Brownlee's request to be seen by a different primary care physician was denied because his records showed no conflict of interest between Brownlee and Friederichs.  Provider assignments are also determined by health care management based on the institution's needs.  (*Id.* ¶ 20.)

**July 19**:  Posson denied Brownlee's request to see a spinal injury specialist for lack of medical necessity.  His review of Brownlee's clinical chart revealed he was being treated for mild lumbar spondylosis with appropriate medications.  Brownlee's clinical examination did not show a significant deficit.  Posson denied Brownlee's request for an

MRI for lack of medical necessity. Brownlee's x-ray showed mild degenerative disc disease, and the examination did not reveal any evidence of an infectious or infiltrative process or significant spinal impingement. There was thus no reason for additional imaging at that time. (*Id.* ¶ 21.)

**July 20**: Defendant Sweet interviewed Brownlee regarding another grievance, in which Brownlee requested hydrocortisone injections to treat his back pain. Sweet denied the appeal after reviewing Brownlee's medical chart, which showed that he did not qualify for a cortisone injection at that point in time. Additionally, under California Code of Regulations, Title 15, Article 8, section 3354, inmates may not demand a particular medication or a specific treatment for injuries. (*Id*. ¶ 22.)

**August 10**: Posson denied Brownlee's request for a permanent lower bunk accommodation. The request was premature because Brownlee already had assignments for a temporary bottom bunk, limited stairs use, and a ground floor housing placement until December 20, 2016. Moreover, a re-evaluation was planned before the expiration date. Posson agreed with Lam that a specialist was not medically necessary. He informed Brownlee that while he may refuse care, he could not select his medical provider. Health care providers are determined by health care management based on the institution's needs. (*Id.* ¶ 23.)

**August 15**: A registered nurse evaluated Brownlee, who observed that Brownlee was ambulatory and had a steady gait. Brownlee was advised to continue pain medication and was referred to Friederichs for a follow up evaluation. Brownlee was released in stable condition. (*Id.* ¶ 24.)

**August 25**: Friederichs evaluated Brownlee and informed him that the request for Gabapentin was denied. Brownlee agreed to try an alternate nerve blocker, Trileptal (oxcarbazepine), along with physical therapy. From September 2016 until present, Brownlee has been taking Trileptal and acetaminophen in varying doses as prescribed to control his low back pain. (*Id.* ¶ 25.)

**September 23**: Brownlee had physical therapy sessions in which it was noted that

his lumbar strength and range of motion were progressing. By October 12, 2016, the physical therapist noted that Brownlee was moderately active because he worked out and played sports. (*Id.* ¶ 26.)

**October 27**: Brownlee's grievance appeals were denied at the Director's Level and signed by defendant Lewis. The appeals were denied because there was no evidence to indicate to the primary care physician that a referral to a spinal injury specialist or for an MRI was warranted. Additionally, the request for a permanent lower bunk accommodation was premature. Furthermore, hydrocortisone injections were deemed not medically necessary because Brownlee was about to start taking Trileptal for pain and to attend physical therapy. (*Id.* ¶ 27.)

**November 28 and December 21**: Friederichs evaluated Brownlee, who denied having any pain but indicated having consistent altered sensation in his right leg and being unable to climb stairs due to shortness of breath and chronic back pain. Friederichs again explained to Brownlee that he must have objective evidence of severe disease to qualify for a permanent bottom bunk accommodation. He then renewed Brownlee's bottom bunk accommodation for 6 months, and had him continue the same treatment plan, including medications and an emphasis on exercise programs and stretching. (*Id.* ¶ 28.)

**December 9**: Brownlee filed the instant section 1983 suit against defendants.

**April 19, 2017**: Friederichs noticed during an examination that Brownlee had developed more atrophy of the right thigh. Brownlee indicated that Trileptal was not working at the present dose. In response, Friederichs increased the Trileptal dose from 600 mg to 900 mg. Friederichs also resubmitted a request for Brownlee to be seen by a physical medicine and rehabilitation specialist. (*Id.* ¶ 29.)

**May 11**: Friederichs further evaluated Brownlee concerning his lower back pain. Brownlee said that Trileptal was not easing his pain. In response, Friederichs tapered off Trileptal to 300 mg and prescribed Effexor (the brand name of "venlafaxine"). (*Id.* ¶ 30.)

**June 22**: Brownlee had his first physiatry consultation concerning his persistent back pain. (*Id.* ¶ 30.)

**July 10**:  Friederichs saw Brownlee for follow-up.  Brownlee said that Trileptal and Effexor were helping his pain.  (*Id.* ¶ 31.)

**September 8**:  Friederichs saw Brownlee for a follow up appointment.  Brownlee indicated that Trileptal and Effexor were helpful in the afternoons.  The medications were continued along with acetaminophen for pain.  Brownlee was scheduled for a follow-up appointment in three to four months, but was told to return sooner if his back pain worsened.  (*Id.* ¶ 32.)

Brownlee alleges that during all the above dates "nothing was done to control [his] pain."  (Opp., Brownlee Affidavit, Dkt. No. 27 at 1.)  He declares that he is still in severe pain, which prevents his daily living activities.  He also asserts that medical treatment is being denied and delayed , and that his medications are not related to stopping pain.  (*Id.*, Brownlee Genuine Dispute Material Fact, Dkt. No. 24 at 7-8.)  He disagrees with the diagnosis of degenerative disc disease and alleges that the cause of his back pain is the use of excessive force by prison guards.  (*Id.*, Brownlee Decl., Dkt. No. 26 at 2.)  Brownlee also claims Friederichs has a conflict of interest with him because of a civil lawsuit previously filed by Brownlee.  Brownlee Stmt. of Claim.  (Compl., Dkt. No. 1 at 7.)

### STANDARD OF REVIEW

Summary judgment is proper where the pleadings, discovery and affidavits demonstrate that there is "no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Material facts are those which may affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.  *Id.*

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the

moving party. On an issue for which the opposing party by contrast will have the burden of proof at trial, as is the case here, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(c). The Court is concerned only with disputes over material facts and "[f]actual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. It is not the task of the court to scour the record in search of a genuine issue of triable fact. *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). The nonmoving party has the burden of identifying, with reasonable particularity, the evidence that precludes summary judgment. *Id.* If the nonmoving party fails to make this showing, "the moving party is entitled to a judgment as a matter of law." *Celotex*, 477 U.S. at 323 (internal quotation marks omitted).

## DISCUSSION

Brownlee claims that his doctors were deliberately indifferent to his serious medical needs and that the grievance reviewers are liable for failing to intervene.

A prison official is deliberately indifferent, in violation of the Eighth Amendment, if he knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but "must also draw the inference." *Id.* In order for deliberate indifference to be established, there must exist both a purposeful act or failure to act on the part of the defendant and harm resulting therefrom. *See McGuckin v. Smith*, 974 F.2d 1050, 1060 (9th Cir. 1992).

In order to prevail on a claim of deliberate indifference to medical needs, a plaintiff must establish that the course of treatment the doctors chose was "medically unacceptable under the circumstances" and that they embarked on this course in "conscious disregard of an excessive risk to [plaintiff's] health." *Toguchi v. Chung*, 391 F.3d 1051, 1058-60 (9th

8

Cir. 2004). A claim of mere negligence related to medical problems, or "the inadvertent failure to provide medical care, or a difference of opinion between a prisoner patient and a medical doctor, is not enough to make out a violation of the Eighth Amendment. *Id.*; *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981).

The undisputed facts show that Brownlee received constitutionally adequate medical treatment. From February 2016 to September 2017, defendants responded to his complaints of back pain. He had frequent examinations (which included an x-ray). His medications were adjusted in response to his reports of how effective they were. He was encouraged to exercise and stretch. He consulted with a physiatrist. He had a lower bunk assignment. This record demonstrates attention and care, not deliberate indifference. For example, when Brownlee indicated that Trileptal was not working at the present dose, Friederichs responded by increasing the dosage. When Brownlee complained that Trileptal at the higher dose was not easing his pain, Friederichs responded by tapering off Trileptal and prescribing Effexor, a medication Brownlee admitted was easing his pain. The undisputed record of thorough and attentive treatment entitles defendants to summary judgment.

Brownlee's disagreement with the course of treatment does not create a dispute of material fact. His requests for an MRI and referral to a spinal injury specialist were not medically warranted. He suffers from mild degeneration of the spine, which is largely the result of age and can be treated with medication and exercise. He offers no competent medical evidence to dispute the legitimacy of his doctors' diagnosis or course of treatment. His x-ray showed no indication of significant spinal impingement or of anything else that required the services of a specialist. Indeed, the record shows that he could perform basic daily activities (walking, dressing himself, working in the kitchens, etc.) and that his pain was tolerable.

Defendants' denials of his requests for other medications, such as hydrocortisone shots, do not create a genuine dispute of material fact. The medications prescribed were appropriate. Nortriptyline is often used to treat back pain. Though also an antidepressant,

9

it also reduces muscle pain and tension, aids in regaining good sleep patterns, and addresses the mental and emotional toll of pain. Salsalate, which Friederichs also prescribed, is an anti-inflammatory, appropriate treatment for back pain. Trilpetal blunts pain signals, and Effexor is another antidepressant often prescribed for pain. Posson Decl., ¶¶ 10, 13; Friederichs Decl., ¶¶ 12, 15, 18, 21, 22.

Brownlee presents no evidence to show a genuine dispute that he should have been assigned a different primary care physician. As the undisputed record demonstrates, Friederichs provided appropriate treatment.

Brownlee's request for a permanent lower bunk assignment does not create a dispute for trial. He had a lower bunk assignment, subject to renewal, throughout the course of his treatment. That it was not made permanent does not show deliberate indifference. Rather, it shows attention by medical staff. When time comes to renew the assignment, doctors must examine Brownlee and can tailor his treatment as needed.

In short, Brownlee's treatment was thorough and varied. It included x-rays, prescriptions for various medications, light exercise, stretching, physical therapy, physiatry, and a lower bunk assignment. Because he has not shown a genuine dispute of material fact that his doctors were deliberately indifferent, his claims against the grievance reviewers also fail. Defendants' motion for summary judgment is GRANTED in favor of all defendants.

## CONCLUSION

Defendants' motion for summary judgment is GRANTED in favor of all defendants. (Dkt. No. 20.) The Clerk shall enter judgment in favor of all defendants, terminate Dkt. No. 20, and close the file.

**IT IS SO ORDERED.**

**Dated:** September 10, 2018

WILLIAM H. ORRICK
United States District Judge